Mr. Wayne? Good morning, Your Honors. Seth Wayne on behalf of Plaintiff's Appellants. I would like to reserve two minutes of my time for rebuttal. Keep track of your own time. I absolutely will. This case, may it please the Court, is a challenge to a private for-profit debt collection company working in concert with local officials to threaten and jail impoverished Oklahomans because they are unable to make payments on court debt. The District Court's sweeping decision dismissing the entire complaint and defendant's arguments are based on a fundamental misapprehension of plaintiff's allegations and the actual claims in the complaint. As an initial point, I would like to mention that nothing in the District Court's opinion and nothing in defendant's arguments addresses how any of these federalism doctrines, these jurisdictional doctrines, apply to plaintiff's claims against Aberdeen, the debt collection company, and its activities in this debt collection process. But beyond that, the opinion essentially I want to interrupt you initially. Was the argument made to the District Court that the Ricker-Feldman Doctrine and the basis of the judges, the other theory, Younger, is that those did not apply to Aberdeen? Was that specifically argued before the Court ruled? Yes, Your Honor. There have been many arguments before the District Court, and I would point out that the District Court did not apply to Aberdeen. There were 13 motions to dismiss. I don't want to waste the rest of your time. Go ahead. Yes, Your Honor. I think the most basic error made by the District Court that underscores all three of its decisions in this case on those three doctrines is that plaintiffs challenge their state court convictions or their state court sentences. There is an honest reading of the complaint and the claims and the request for relief demonstrate that even if plaintiffs were to succeed on every single one of their claims and get every single point of relief that they have requested, there is nothing that would change anything about their convictions or their sentences. So does the fact that the Oklahoma courts have continuing jurisdiction over these sentences not constitute an ongoing proceeding in Oklahoma? I think that is a vital question for this case, Your Honor, and the short answer is no. Essentially, the District Court and defendants argue that the mere fact of ongoing jurisdiction is sufficient to constitute an ongoing proceeding for Younger purposes. And what other courts have found is that that's simply not the case. And that's not the case for a good reason. Generally, an ongoing proceeding, as this court has reflected, requires some kind of ongoing involvement of the court, some kind of ongoing participation. I'd first point out that in this case, all of plaintiffs' criminal cases are over in that their convictions have completed, their sentences have been issued, and often all other terms of the sentences have been completed as well. So when you mean over, you just mean final? Correct. They are final. The only thing that is not over, to reuse that term, is their debt. The only thing that remains pending for each of the plaintiffs and for most of the class members in this case is unresolved debt to the court. No court has held that the mere fact of unresolved debt constitutes an ongoing proceeding for Younger purposes. And I think what this court's decision in Valdez shows is that there must be some kind of hallmarks of an ongoing proceeding to constitute an ongoing proceeding. In that case, which involved juveniles who, post-adjudication, received ongoing hearings and regularly scheduled abilities to be heard by the court, this court decided based on those that did constitute an ongoing proceeding. And how is that not like Rule 8 here? Here, there's nothing of the sort. As the allegations show, Rule 8, to the extent it requires a hearing before a person is arrested, to the extent it provides for ongoing court processes, simply not followed. The allegations reveal what an actual case looks like, which is nothing like any of the hallmarks of a truly ongoing proceeding. I'll give an example, which is one of Plaintiff Frazier's cases, which is representative, I think, how a lot of these cases go, which is that someone can be sentenced, they're given a fine, they're given additional fees, they're told to go to the clerk to set up a payment plan. They go and they do. They can make payments for some reason, due to changed circumstances, or they simply run out of money. At that point, what happens is the clerk automatically contacts the court to issue a warrant. There's no hearing. The person has no ability to speak to anyone. The individual is given no notice that this warrant is going to be issued. There's simply, essentially, an automatic process by which a boilerplate application is submitted and an arrest warrant is issued. And it's signed by the judge? It is signed by the judge, correct. Are you contending that Rule 8 is sort of useless for all purposes here? What about the 30 percent, the unconstitutionality of the 30 percent referral fee? Wouldn't that be appropriate to contest in a Rule 8 hearing? No, Your Honor, and here's why it wouldn't be, because that 30 percent addition is set by statute and automatically applies upon transfer. Transfer under state law to the private debt collection company is done at the discretion of the clerk or the sheriff. There's simply no involvement of the court in that transfer or in the 30 percent surcharge that gets applied. But that goes to the amount of debt, though, right? I mean, you agree that that is the actual amount that's at issue? Yes, that 30 percent is part of the amount of debt that people owe, and it is the only amount, the only actual money that plaintiffs challenge. None of the fines or fees or costs that are assigned at the time of sentencing are challenged in this complaint, in this case. The only amount of fines or fees that are owed by plaintiffs that is challenged is this 30 percent surcharge that automatically applies upon transfer at the clerk's discretion. There's a number of other areas... So the warrant goes, the clerk submits to the judge, the judge signs the warrant, the warrant goes to the sheriff, and then the sheriff makes the determination whether they're going to enforce it or whether they're going to turn it over to Aberdeen. Correct. If the sheriff enforces it, there's no 30 percent surcharge. That's right, Your Honor. And it's either the clerk or the sheriff that has the discretion to transfer cases. The allegations in the complaint indicate in most instances, particularly in Tulsa and Rogers, the two emblematic counties that are the focus of this complaint. It is often the clerk that makes the transfer. Upon transfer to Aberdeen. To Aberdeen, correct. It is the clerk of court who does that, or the cost administrator who is an official underneath the clerk of court in Tulsa. Now, as I understand it, these fines that are collected do not, they are specifically used for the administration of the courts. They're used for a number of different purposes, Your Honor, and the complaint gives a laundry list of the various types of the fines. I got the impression that the legislature is decreasing their budgetary support for the administration of the courts because the courts are generating their own revenues for their own administration by these fines. Is that a fair statement of what your allegations are? Yes, Your Honor. That is part of the background allegations in the complaint that purport to explain how this process happened. How we ended up in this situation that this extortionate debt collection process is occurring. But it is not the foundation of plaintiff's claims. And if I can, I will finish that, the description of how this typical case goes. Once a case is transferred, Aberdeen begins threatening the person, calling them, sending them letters, contacting their family, threatening them, demanding they pay a certain amount or they will be arrested. At that point, if the person is able to make a payment to Aberdeen, their warrant is recalled again without any process. Aberdeen simply contacts the clerk of court who contacts the judge. And through this automatic process, the warrant is recalled. Aberdeen retains control of the case, including that 30 percent surcharge, and continues to pressure the individual to make payments. If the person at some point can no longer pay Aberdeen what it's demanding in the amounts it's demanding, Aberdeen contacts the court again for an issuance of a new warrant. Again, the person is not given notice that there is any kind of process available to them. There is no hearing scheduled. There is no sworn statements. It functions simply as an email, an unsworn email from the private debt collection company to the clerk, who then refers it to the judge to issue a warrant. There is no time that a person has an opportunity to be heard by any neutral decision maker about their ability to pay. And indeed, those applications are made even when the debtor tells the Aberdeen employee or tells the clerk of court that they simply are unable to pay because of indigence. This process occurs the exact same way for people who willfully refuse to pay, and people who, like plaintiffs, because of their poverty are unable to pay. Do they ever get to a hearing? They do, Your Honor. But what happens before the hearing, and the only time that hearing occurs, is after the person is arrested on the warrant and held in jail, often for days, or like plaintiff Holmes for a week, before they have an opportunity to speak to the judge. And can they make a pitch to the judge when they come in for the hearing? Yes, Your Honor. At that point, after all of this has occurred, which are the harms that are challenged in this lawsuit, the hearing occurs after all those things have happened. At that point, they can address the judge and make their arguments. And what if the judge says, well, you know, you're right. I feel sorry for you. I'm going to remove the fine that you were imposed. Does he do that? Can he do that? I believe that they are able to waive the fines pursuant to Rule 8. They typically do not. As the allegations show in Rogers County, the judge at that hearing will say you have to pay $100 or you will sit out in jail the amount of money you owe at $25 per day to reach that $100, which is a very straightforward confrontation of the Supreme Court's Bearden decision. Or in Tulsa, the person is released to go back to making payments. In that process, this cycle occurs. At no point in the hearing is the person given an opportunity to challenge many of the things that this complaint challenges, including Aberdeen's extortion activities, which are not the subject. But they're able to challenge. They're able to present their ability to pay. They can present their ability to pay argument. But at that point, they have to. And if they do it and the judge says, no, no, no, no, at least pay this much, you can afford it. You're not challenging those decisions, are you? We are not challenging the decisions that happen at the hearing or essentially the outcome of those hearings. My understanding is that would implicate Rooker-Feldman. You just want the pre-deprivation hearing. Exactly. What plaintiffs seek here is the proper process in the collection of debt, which would include an analysis of their ability to pay at, say, a show-cause hearing, before they are arrested and jailed for the fact of nonpayment. Now, do these cases get separate numbers? Or do they carry the criminal number from the earlier conviction? They continue to carry the criminal number for the earlier conviction. And with that, I will reserve the rest of my time. What are the allegations of the complaint, if any, regarding the execution of these arrest warrants? Is it done, they go knock on the door and arrest the person? Or do they just wait until they're picked up on a traffic violation and see if they have an outstanding warrant? Is there any allegations one way or the other? There are no allegations one way or another about how they are executed, what the complaint does allege, and one of the claims are about the way the person is jailed after the warrant is executed and before the hearing occurs, which is pending payment of a certain amount. And I have 10 seconds left, and I will reserve those 10 seconds for a quick one-sentence rebuttal. Thank you. Mr. LeBlanc? Thank you, Your Honor. May it please the Court, Thomas LeBlanc appearing today on behalf of all of the appellees, the defendants in the lower court. Now, I didn't realize, counsel, that you could have a porpoise prison still in Oklahoma. And you absolutely cannot, Your Honor. And Rule 8 and the statutes that the Oklahoma legislature designed and which the Rule 8 rules from the Court of Criminal Appeals implement prohibit exactly that. But they're exactly doing that. If they're putting somebody in jail for $25 a day to work off a $100 fine. Your Honor, even the Supreme Court in Bearden recognized that it is permissible, provided you give the criminal defendant due process, if someone is willfully ignoring and not paying. What is the due process? When they get no notice, they get nothing but a demand, and then they're arrested, and several days later they may get to a judge. Where is the due process? So let's begin at the beginning of Rule 8, Your Honor. And I would direct the Court not just to bald allegations in a petition, but I would direct the Court to the record. And in particular, we'll start with Rogers County. Joint Appendix 842, Your Honor, is the Rule 8 order for Carly Graff, one of the plaintiffs in this case in Rogers County. Your Honor, it's important to note every one of these appellants, plaintiffs, criminal defendants in the state court matter, started out this process by pleading guilty to various misdemeanors and felonies. As a part of that plea bargain agreement that they entered into with the state district court, they also had a Rule 8 hearing, Your Honor, a Rule 8.1 hearing, as reflected in JA 842 in Rogers County. This order starts, and I quote, the court having imposed various fines and costs on the defendant this date and having further determined that the defendant is not capable of paying the entire amount at this time due to the defendant's financial circumstances, orders the defendant to see the cost administrator as set forth in the attached order. That's how it begins. It goes on to say, and I quote, you, defendant, are advised that you must make payments in accordance with the plan you have executed or, per the plan, advise the court administrator in person on the due date of the next payment. It goes on to say at the initial Rule 8.1 hearing, if you fail to make payments in accordance with your payment plan agreement and do not appear on your due date in person before the collection administrator, a warrant for your arrest will issue without further notice. That order is signed by the criminal defendant, by her lawyer, and by the judge of the district court. They then proceed on to enter their payment plan agreement, Your Honor, and I would refer the court to JA Joint Appendix 834. This is Ms. Graff's payment plan agreement in Rogers County where her case number is identified, the amount of her fees and costs is identified, $83 a month is identified as her payment. And it, again, specifically says, all payments must be received in the office of the clerk on or before the due date to avoid penalties. If you cannot make your payment, you must appear in person on your due date. They also give a phone number that you can call. Counsel, what is your point? Is your point that at that juncture, the individual should have challenged the debt collection practices that were not yet implemented? That's a significant part of the point, Your Honor, because I think to understand the Rule 8 process, you have to start at the beginning, which the plaintiff appellants do not do. They ignore. For example, I also point to Tulsa County. Ira Williams entered a very similar Rule 8.1 order, agreed to make payments, had a payment plan, was advised that failure to make payments or appear or contact the court would result in a bench warrant being issued. So you're saying that the debt collection enforcement practices, any constitutional challenges to those are part of the defense of a criminal case? Yes, Your Honor, because at that point, they have entered into a plea agreement in exchange for not going to jail at that time. They're agreeing to a monetary sentence. And under Oklahoma statute- But they're not agreeing to debt collection practices. They're agreeing to a fine, which is part of a component of the sentence. You're exactly right. And what the Rule 8 process contemplates and requires is if at any point in time, the criminal defendant becomes unable to pay, then as the court in Bearden and its progeny and as in the Windbush-Oklahoma Court of Criminal Appeals case recognized, which is all cited in our papers, indigency, poverty, the inability to pay, is an affirmative defense to payment of that monetary sentence. Counsel, what do you understand the harm to be that the plaintiff's alleged that they have suffered in this case? What is the harm? Well, when you read the plaintiff's second amended complaint over 50 times, they refer to themselves as indigent, impoverished, and unable to pay the court debt as originally imposed at that original Rule 8 process. So the first component of their harm, and what they clearly are attempting to do, is to get out from under those original costs, fines, and fees that were imposed. And the criminal conviction, which they argue they're not challenging, is meaningless without an accompanying sentence. So that's the first harm. The second harm that they seem to complain about is the phone calls and the letters from Aberdeen. And to be clear, Your Honor, when you read the statutes, which are cited and submitted in the briefing, Aberdeen, first of all, is one of several vendors in the state of Oklahoma. They never become involved with any criminal defendant until that criminal defendant is in violation of their judgment and sentence and the court on its own has issued a warrant, a bench warrant, to enforce those orders that are being violated. And there is no question, there's no argument, there's no authority for the position that the district criminal court lacks the authority to issue a bench warrant whenever it determines, based on the judicial notice of its own record,  a bench warrant is routinely issued by courts all across this country when the court determines that the criminal defendant, or in some cases even civil participants in the process, are in violation of the court's order. And that's what happens. So are you saying that the ability to pay finding and hearing is the same, should constitute the pre-deprivation process for the debt? It's just one. You get one shot and that's it. No, no, no, no. Quite the contrary, Your Honor. What I'm saying is, and this is particularly why the Younger Doctrine is precisely applicable in this case, this is an ongoing proceeding. There's been a judgment and sentence entered. It's ongoing. Rule 8 allows the criminal defendant at any moment, at any time, to come to the court and plead their case that they can't make the payments for whatever reason. And the court is obligated to provide them a hearing, to listen to them. And under Rule 8, if the court determines that, in fact, they cannot make the payment, then, number one, the court is prohibited from jailing them. And number two, the court has the power to either do away with the fines, fees, and costs, or suspend them and allow them six months or a year, come back whenever, and we'll review this again. Do you think that Younger is a narrow exception? Yes, Your Honor. I mean, the courts have repeatedly said that Younger, in principle, is a narrow exception. It's hard to conceive of a more appropriate or applicable scenario for Younger than this case, however, where even the plaintiff's petition, which acknowledges regularly scheduled court dockets in both Tulsa and Rogers County, which acknowledge the ability of the plaintiff at any time. Let's use Carly Graff, for example, the Rogers County plaintiff I mentioned earlier. Appellants, in their opening brief, acknowledged the fact that during the pendency of this lawsuit, Ms. Graff went to Rogers County, paid her fines, fees, and costs, and she has no ongoing warrant. There's no reason for her to fear arrest. She did. She complied with the original order, judgment, and sentence, and paid her fines, fees, and costs. She could have done that before filing this federal lawsuit. Instead, as the district court recognized, she and others, for obvious reasons, chose not to participate in the Rule 8 process, and instead filed their lawsuit where they're asking the federal court to intervene, to make indigency determinations, and essentially re-sentence them from their original fines, fees, and costs. Ms. Graff and every one of these plaintiffs had the ability at any time, and still today, to appear before the district court judge in the state criminal matter and plead their case, and they can argue every single one of these issues to that state district court judge. And if they end up being thrown, as your Honor, Judge Kelly suggests, into a pauper's prison, Rule 8 expressly provides them a direct appeal to the court of criminal appeals on that issue. And they, of course, have, as Rule 8 recognizes, the ability to appeal any aspect of their underlying costs, fees, and fines, your Honor. Mr. LeBlanc, is it your position that a substantial comparable to the opportunity for a pre-deprivation hearing exists from and after the original 8.1 hearing when the defendant is given notice that they can appear at the court and not pay because of poverty? Are you saying that's an adequate pre-deprivation opportunity? Absolutely, your Honor. There are two ways that the criminal defendant can get a pre-deprivation hearing, and I assume, your Honor, specifically addressing the Bearden concern, which is before we can convert a monetary sentence into a jail sentence, there must be a pre-deprivation hearing. And the criminal defendant has two opportunities for that. One, on their own, because who better than they to know their individual financial circumstances and whether those have changed or not since the original plea bargain. At any time, they can come forward either to the court clerk or, in Tulsa County, the court administrator, or directly to the judge because they still have an open, ongoing criminal case for which they have a lawyer. What makes it open? It's never been closed, your Honor. And when you say closed, you mean administratively closed on the docket, or are you just saying that because there is a theoretical possibility of, at some point, challenging debt collection practices, that the case is open? The former, not the latter. We're not talking about any theoretical possibilities. It is an open, ongoing criminal proceeding, and the court clerk is making entries into that open court case docket, reflecting whether or not payments are being made, reflecting whether or not they're in compliance with their monetary sentence. The district court has an obligation and does, in fact, monitor its criminal cases, albeit with the assistance of either the court clerk's office or the vendors who are able to convey information to the district court judge, and those, at times, will trigger the issuance of a bench warrant when it comes to the court's notice, through judicial notice of its own docket, that I have a criminal defendant out there who is in violation of the court's orders, judgment, and sentence, and I have the right, legally, to issue a bench warrant. And that's what occurs. And so that's the second opportunity, is if, in fact, there is a bench warrant issued, and if, in fact, which is rare, only one of these plaintiffs even allege having ever been arrested on one of his bench warrants, but if it occurs, then, yes, there is that opportunity as well, as Judge Kelly pointed out, to be brought before the court and plead all of these issues, including indigency and poverty. And then, of course, interspersed in between that, which does also occur, is the court, on its own, can set any matter on its regularly scheduled cost docket, and have the criminal defendant appear before it on one of its regularly scheduled cost dockets. So there are multiple opportunities before an actual sentence conversion from monetary to jail time. And ultimately, Your Honor, I would just, in my remaining five seconds, point out briefly that, additionally, the Rooker-Feldman doctrine clearly applies to this case where you have a state court loser, even in the face of a guilty plea, as opposed to a jury trial, and a state court judgment, and where the relief sought by the plaintiff has, in this case, necessarily invites the federal court to look back and undo the state court's decisions. And with that, I see I'm actually over my time. If there's nothing further, thank you, Your Honors. Thank you, Counsel. Paul, let's add a minute. Thank you. Thank you, Your Honors. I would like to briefly address a few points my adversary made. First, he mentioned that this is a rare problem. Nothing is further from the truth. Multiple plaintiffs have been arrested on warrants for nonpayment, and the record reflects that there are tens of thousands of warrants for nonpayment issued in Tulsa County alone. This is a massive problem that affects people in poverty across the state of Oklahoma. Second, my adversary's characterization of what Rule 8 requires flies in the allegations of what defendants actually do. Rule 8, first of all, I just point out that nothing in Rule 8 allows a debtor the opportunity to request a hearing with the court. That's simply not part of what the rules provide, and it's also not what happens in practice. In practice, my adversary referred to Rogers County and Plaintiff Graff, and the Rule 8 order, providing that she should come into the clerk's office if she couldn't make a hearing. What the allegations show is that if someone goes to the clerk in Rogers County and requests an extension, if at some point the clerk decides that the person has requested too many extensions, they will automatically seek and issue, the court will issue a warrant without any hearing or process. There's simply nothing where they're advised that they could go to the court and be heard. Judge Rossman, can I ask a question? Yes, of course. When the defendant is given notice that upon the due date, they cannot pay, then they can appear and make that claim. Is that an adequate substitute for a pre-deprivation hearing? They know what's due, when it's due, they know they can't do it, and they can go to the court. Is that adequate? Your Honor, I think no. If they're just told that you can go to the court and show up and make an argument, that would require some kind of initiation of process on the part of the person. The language in Bearden indicates that the court has an independent responsibility to assess ability to pay before jailing someone for nonpayment of debt. That being said, the court is certainly able to hold a hearing to issue a subpoena, a notice of a show cause hearing, and have the person come in and be heard. And should the person fail to appear or that fail, then that would happen. But I would point out that just the scenario Your Honor has mentioned is simply not what happens. I understand.  Thank you, Your Honor. Judge Kelly, anything? No. Thank you, Counsel. Thank you. The case is submitted and Counselor.